| UNITED STATES DISTRICT COURT | C/M |
| EASTERN DISTRICT OF NEW YORK | |

-----------------------------------------------------------X

THEADORE BLACK,

                Plaintiff,

- against –

PAROLE OFFICER D. PETITINATO; P.O. PAYAMI; SENIOR P.O. LINDA JEFFERIES; THE PO THAT ISSUED THE PAROLE WARRANT; ALL PAROLE OFFICERS THAT TOOK PLACE IN THE SEARCH OF MY WIFES HOME ON 9-29-2015, PAROLE OFFICE BROOKLYN V 15 2d AVE BROOKLYN NY 11215; NYS DIVISION OF PAROLE; POLICE OFFICER DAMICO POLICE OFFICER SANTANA (SANTIAGO); LT. DOYLE; ALL POLICE OFFICERS AND THAT TOOK PART IN THE SEARCH OF MY WIFES HOME ON 9-29-2015, 75TH PRECINCT 1000 SUTTER AVE, BOOKLYN NY; DR. KURTZ, EMTC (C-76); DR. COOPER (sick call June 2016); DR. GOLDBERG, West Facility; DR. JANE DOE, EMTC (C-76) March 8, 2016; C.O. BRADLEY (Mail Lady) EMTC (C-76); CAPTAIN QUINONES, Otis Bantum (OBCC),

                Defendants.

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**

16 Civ. 3941 (BMC)(RLM)

**COGAN,** District Judge.

      Plaintiff *pro se*, currently detained on Rikers Island, filed this action for damages alleging violations of his constitutional rights. Specifically, he challenges his arrest and the search of his wife's home by New York State parole officers and New York City Police Department officers, the denial of adequate medical care during his detention on Rikers Island, and the interference with access to his legal mail and the law library by Rikers Island staff. Black's request to

proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons set forth below, the complaint is dismissed with leave to amend.

## BACKGROUND

**I. Litigation History**

This is plaintiff's fourth action in this court. In his first action, <u>Black v. Blackmun</u>, 11 Civ. 2372, plaintiff sued the same two types of defendants as named herein: (i) the parole and police officers who assisted in the search of the home in which he was residing and in his arrest and (ii) the Department of Corrections employees who, according to Black, either failed to properly care for him or subjected him to unwarranted disciplinary charges while in custody. Except plaintiff's claim related to his supportive footwear which was settled for the sum of $1000.00, all of the claims against all the parties were dismissed. Four years later, Black's action, <u>Black v. Veterans Hospital</u>, 15 Civ. 5315, seeking damages for the death of his father, was dismissed for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), and for failure to state a claim on which relief may be granted. <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii). Earlier this year, plaintiff filed a civil rights action challenging the same search and arrest challenged herein, naming the police and parole officers he has also named in this action. <u>See</u> <u>Black v. Parole Officer Petitinato</u>, 16 Civ. 2320. After the remedy of some filing deficiencies, that case is now proceeding.

**II. Allegations of Complaint**

Plaintiff has been detained at Rikers Island since September 30, 2015.[1] His complaint in this action names two groups of defendants: (i) the parole and police officers who assisted in the search of his wife's home and in his arrest on that same day; and (ii) the Department of Correction employees who, according to Black, either failed to provide adequate medical care or impinged upon his access to his mail or to the courts.

Plaintiff alleges that he was asleep at his wife's home on September 29, 2015, when the defendant parole and police officers searched the home without a warrant or permission, in front of and including the room of their eight-year old son, despite the fact that plaintiff was not in violation of any laws or his parole conditions. He was arrested by officers of the 75th Precinct of the New York City Police Department. He alleges that the police were investigating criminal activity in the building in which plaintiff was not involved and for which he should not have been arrested.

Regarding his detention at Rikers Island, he alleges that his medical care has been inadequate in three ways: (1) Doctors Kurtz, Goldberg, and Cooper failed to provide supportive footwear needed because his diabetes causes pain in his feet; (2) Dr. Jane Doe refused to provide treatment for the abscesses on his left arm on March 8, 2016; and (3) Dr. Cooper refused to provide treatment for his foot pain, "rash on my backside and my chafed lips that had split."

---

[1] Plaintiff alleges that the charges against him arising from this incident were dismissed on February 18, 2016 for "facial insufficiency," but according to the records of the Department of Correction of which the Court takes judicial notice, plaintiff remains at Rikers Island, detained pursuant to his arrest on September 29, 2015, arrest number K15674688Y, and has two outstanding felony warrants. *See* [http://a073-ils-eb.nyc.gov/inmatelookup/pages/common/find.jsf](http://a073-ils-eb.nyc.gov/inmatelookup/pages/common/find.jsf) (last visited July 18, 2016) (also listing two felony warrants issued by the New York State Department of Parole: nos. 00704272 and 00576797).

Plaintiff also alleges that his access to courts has been circumscribed because (1) in December, 2015, defendant Quinones denied him access to the prison law library on "numerous occasions" and (2) defendant correctional officer Bradley confiscated plaintiff's mail once in March, 2016, and, on May 26, 2016, she opened his legal mail.

## DISCUSSION

### I. Standard of Review

Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. Upon review, a district court shall dismiss a prisoner's complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." Id.; Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that under PLRA, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted but mandatory); see also Tapia-Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir. 1999).

Further, under 28 U.S.C. § 1915 (e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." The Court construes plaintiff's *pro se* pleadings liberally particularly because they allege civil rights violations. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-93 (2d Cir. 2008).

Although courts must read *pro se* complaints with "special solicitude" and interpret them

to raise the "strongest arguments that they suggest," Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted), a complaint must plead enough facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Twombly, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). These requirements are just as applicable to *pro se* complaints as to any other complaints; indeed, Iqbal itself, like the instant case, resulted in the dismissal of a *pro se* prisoner complaint.

## II. False Arrest and Unlawful Search

Plaintiff repeats his claims regarding the search of his wife's home and his arrest against the same defendant parole and police officers currently pending in Black v. Parole Officer Petitinato, No. 16 Civ. 2320. These claims and defendants are dismissed from this action as duplicative, without prejudice to the litigation pending that matter. See Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

**III. Medical Care**

Black alleges that the Rikers Island doctors' failure to prescribe supportive footwear and to treat his abscesses, a rash and chafed lips violates his constitutional rights. Claims of deliberate indifference to serious medical needs which arise in the course of pretrial arrest and detainment are evaluated under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009); Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (although the Supreme Court has not precisely defined the duty of a custodial officer "to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner.").

To establish a claim of deliberate indifference to a serious medical condition, a pretrial detainee must satisfy both an objective and a subjective element. The plaintiff must show (1) that he had an objectively "serious medical condition," and (2) that this condition was met with subjective "deliberate indifference" on the part of the defendants. Caiozzo, 581 F.3d at 72 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000)). To establish a serious medical condition, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation and internal quotation marks omitted). To show that a defendant was "deliberately indifferent" to a detainee's serious medical condition, a plaintiff must allege that the defendant "knew of and disregarded an excessive risk to [the detainee's] health or safety and that [the defendant] was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." Caiozzo, 581 F.3d at 72 (alteration omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct.

1970, 128 L.Ed.2d 811 (1994)); see also Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (holding that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims").

It is well settled in the Second Circuit that certain "deprivations of medical care that cause or perpetuate pain are sufficient to state an Eighth Amendment claim," Barreto v. County of Suffolk, 762 F. Supp. 2d 482, 488 (E.D.N.Y. 2010) (citing Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003)). However, a deprivation alone is not enough; a plaintiff must also allege facts showing that the medical condition was "sufficiently serious" and that the defendant acted with "deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). When determining whether a medical condition is sufficiently serious, courts consider a number of factors, including whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether the condition causes "'chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

With regard to his claim that prison personnel declined to issue him supportive footwear, I see no allegations that to suggest either a sufficiently serious medical condition or that defendants acted with deliberate indifference towards it. Plaintiff alleges only that: (1) he was issued standard footwear when he entered the prison in February, 2016; (2) he is an insulin-dependent diabetic and has foot pain as a result; and (3) three health care professionals, defendants Drs. Kurtz, Goldberg, and Cooper, separately talked to him about this and declined to prescribe supportive footwear.

By these allegations, plaintiff has presented nothing more than a disagreement between the facilities' health professionals and himself as to whether he needs a particular accommodation. This disagreement does not plausibly amount to a constitutional deprivation.

First, there is nothing to suggest that plaintiff's level of discomfort is the kind of serious and sustained pain that the Eighth Amendment was meant to prevent. Certainly there is no indication of "death, degeneration, or extreme pain." Hill, 657 F.3d at 122. The cases rejecting similar inadequate footwear claims are legion, and involve inmates with both pre-existing medical conditions that allegedly require special footwear, and inmates who claim that the standard issue footwear causes them pain. In both situations, the courts require facts showing an extreme level of discomfort or risk of exacerbated injury before the condition is viewed as serious enough to support a constitutional claim.

At the extreme end of the spectrum is Walker v. Clemson, No. 11 Civ. 9623, 2012 WL 2335865, at *1 (S.D.N.Y. June 20, 2012), report and recommendation adopted, 2012 WL 3714449 (S.D.N.Y. Aug. 28, 2012) ("Clemson"), where a Rikers Island inmate obtained a recommendation from a prison doctor for supportive footwear as a result of what he alleged were "spurs on his feet" and "severe pain on the balls of his feet" as well as "spur and ankle pain causing [him] to walk off balance." He alleged that the prison-issued sneakers he received caused him "to suffer pain, chronic fungus, [and] a painful gait which in turn warranted the use of a cane to correct" and that he "now has to wear orthopedic sneakers and faces possible surgeries in the near future." Id. The Court noted that "[w]hile the prison-issued footwear may not have been as supportive as his personal sneakers, the Constitution does not require that prisons provide high-quality footwear . . . . Walker's allegations do not describe a condition of

8

confinement that 'offends contemporary standards of decency or poses an excessive risk to [Walker's] health or safety.'" Id. at *4, quoting, Williams v. Dep't of Corr., No. 11 Civ. 1515, 2011 WL 3962596, at *4 (S.D.N.Y. Sept. 7, 2011).

The decision in Clemson has been criticized, see Walker v. Schirro, No. 11 Civ. 9299, 2013 WL 1234930, at n.7 (S.D.N.Y. March 26, 2013) ("Schirro"), and perhaps rightfully so, because the plaintiff in Clemson not only had pre-existing medical condition requiring special footwear, but he had a prison doctor's prescription to obtain such footwear to address the condition. Schirro, which is one of the few cases to uphold a special footwear claim, was even worse, as it contained numerous specific allegations of deliberate efforts by prison guards to deliberately thwart prison doctors' prescriptions for specialized footwear.

However, I need not determine whether Clemson was correctly decided because Black has made no allegations that come anywhere near either Clemson or Schirro. Rather, he seems to think that because simply he is diabetic, three prison doctors have each committed a constitutional tort by not prescribing his requested footwear. I disagree. With a total dearth of factual allegations substantiating his belief that he will sustain extreme pain or serious injury without specialized footwear, Black's claim fails under like those in the numerous other cases that have rejected similar claims for failure to meet the plausibility standard of Iqbal. As the Court noted in Jones v. Ng, No. 14 Civ. 1350, 2015 WL 998467, at *7 (S.D.N.Y. March 5, 2015), in rejecting a prisoner's claim that prison guards had deprived him of medically-prescribed supportive footwear: "'[C]ourts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy [the objective] prong of the deliberate indifference standard," quoting, Stevens

v. City of N.Y., 12 Civ. 3808, 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013), aff'd, 541 F. App'x 111 (2d Cir. 2013), and citing, Anderson v. City of N.Y. Dep't of Corr., 11 Civ. 4069, 2013 WL 702918, at *4 (S.D.N.Y. Feb. 26, 2013) ("Although [plaintiff] may have been in discomfort for a period of time from wearing shoes that he claims provided no support for the foot or ankle, this does not constitute a condition of confinement that offends contemporary standards of decency or poses an excessive risk to a prisoner's health or safety."); Taylor v. Dep't of Corr., 11 Civ. 6892, 2012 WL 3024743, at *4 (S.D.N.Y. July 24, 2012) ("Courts have repeatedly held that allegations of inadequate footwear resulting in foot pain are not sufficiently serious to satisfy the objective component of a deliberate indifference claim [ ]." (collecting cases)), report & rec. adopted sub nom., Taylor v. Schriro, 11 Civ. 6892, 2012 WL 3306477 (S.D.N.Y. Aug. 13, 2012); Williams, 2011 WL 3962596, at *4 (institutional footwear that caused "extreme" leg and foot pain not a constitutional violation); Brown v. DeFrank, 06 Civ. 2235, 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) ("the case law holds that prisoner complaints about bunions or other foot problems do not establish the objective prong of the deliberate indifference standard"). See also Park v. City of New York, No. 10 Civ. 9627, 2011 WL 5865083 (S.D.N.Y. Nov. 22, 2011) (failure to treat plantar fasciitis); Hernandez v. Goord, No. 02 Civ. 1704, 2006 WL 2109432, at *6 (S.D.N.Y. July 28, 2006) (foot condition made walking more difficult); Kemp v. Wright, No. 01 Civ. 562, 2005 WL 893571, at *5 (E.D.N.Y. Apr. 19, 2005) (failure to treat plantar fasciitis); Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (foot condition required surgical intervention); Alston v. Howard, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (refusal to provide special footwear to an inmate with chronic ankle arthritis); Cole v. Scully, No.

93 Civ. 2066, 1995 WL 231250, at *6 (S.D.N.Y. Apr. 18, 1995) (failure to prescribe orthopedic shoes and dressing feet too tightly after surgery).

In reviewing these cases, the distinction must be noted between those where a doctor has specifically prescribed special footwear and prison guards have refused to comply, and those where a prison doctor has exercised professional judgment and determined that such footwear is not necessary. In the former cases, the defendants are the prison guards, not the doctors. Those cases do not present a question of medical judgment. In Schirro, for example, the Court allowed the case to proceed against prison guards, not prison doctors, precisely because one prison guard "laughed when plaintiff presented her with the medical permit" allowing his wife to bring him special shoes, and refused to accept them; another said "nobody in this building … get[s] their personal footwear regardless of a medical or not, it's the building rules, if it's a problem we ship your ass out to another jail, it's that simple"; and another "cursed at Plaintiff and promised that Plaintiff would never get his custom footwear." 2013 WL 1234930 at *2. Prison guards are not supposed to make medical decisions; they are supposed to comply with them.

In contrast, cases against prison doctors over disagreements with their medical judgment are more difficult to plead. The prisoner-patient knows what he wants and how he feels, but he has no medical training that allows the assumption that by not accepting his judgment, the prison doctor has committed a constitutional tort. A plaintiff seeking to allege that kind of misconduct must first show that the doctor's action is medically unreasonable. But that is not enough, because most instances of medical malpractice are not Eighth Amendment violations. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

11

Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). Rather, the plaintiff must then plead facts showing the kind of reckless indifference that constitutes gross negligence or deliberate misconduct.

That brings us to the second failure of plaintiff's conclusory claim. In addition to the failure to allege serious injury, Black's complaint has no allegations that would support a plausible claim that the prison doctors inflicted any amount of discomfort deliberately or with reckless indifference to it. The Second Circuit has made it clear that "the charged official must act with a sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280, citing, Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991). To show that a defendant was "deliberately indifferent" to a detainee's serious medical condition, a plaintiff must allege facts indicating that the prison doctor "knew of and disregarded an excessive risk to [the detainee's] health or safety and that [the defendant] was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." Caiozzo, 581 F.3d at 72 (alterations omitted) (quoting Farmer, 511 U.S. 825, 837 (1994)).

This is a very important point in prisoner litigation. Prison doctors have to be able to exercise professional judgment without getting sued every time they do. Unless courts require the pleading of facts which show at least recklessness by prison doctors, every prisoner can demand a preferred medical accommodation and bring suit if he doesn't get it.

Nor is it sufficient to say that weak claims will fail on summary judgment. The practical realities are that it costs so much money to defend one of these actions that their survival beyond the §1915A stage will often result in a settlement. Black's situation is a good illustration of this. His prior lawsuit made the same claim that he is making here – a disagreement with prison

doctors over what kind of footwear he should have. Rather than litigate it, the City paid him $1000. That's obviously a nuisance settlement from the City's perspective, far less than it would spend taking the case through summary judgment, but $1000 to a prisoner is a good recovery just for penning the kind of conclusory complaint that Black has filed here.

There are no facts alleged in plaintiff's complaint to suggest why these prison doctors, who have chosen as a career to minister health care to prisoners, would be particularly out to cause plaintiff severe pain or would ignore their professional responsibility to prevent it. The money for the special shoes that plaintiff says he needs would not come out of their pockets. Indeed, the fact that, according to plaintiff's allegations, three doctors separately concluded that he did not need his preferred footwear reinforces the evident insufficiency of his claim. The mere fact that three doctors separately disagree with plaintiff is not enough under Iqbal.

The same deficiencies are even more apparent with regard to Black's claims regarding his abscesses, rash and chafed lips. None of these three skin maladies is sufficiently serious to satisfy the objective prong of the deliberate indifference test. Nor has Black made any allegations sufficient to satisfy the subjective prong regarding these maladies. Plaintiff only states that he was showed Doctors Kurtz and Jane Doe his abscesses at a single sick call and his rash and chafed lips to Doctor Cooper on a different single sick call. He does not say that it was on ongoing medical problem of which they knew and or any facts to suggest why they would deliberately or recklessly disregard a serious condition. Black therefore does not allege facts sufficient for this Court to find that this claim has crossed "the line from conceivable to plausible," as required under Iqbal, 559 U.S. at 680, 129 S. Ct. at 1951 (quoting Twombly, 550 U.S. at 570).

Accordingly, plaintiff's § 1983 claims regarding medical conditions are dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b).

**IV. Legal Mail**

"It is well established that all persons enjoy a constitutional right of access to the courts . . . ." Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997). "Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). However, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." Id. (citations omitted). "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.,* took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." Monsky, 127 F.3d at 247 (internal citation and quotation omitted).

Here, plaintiff alleges two instances of mail interference by defendant Bradley. First, in March, 2016, defendant Bradley "took my envelope that my mail had come in" and on May 26, 2016, she "'accidentally' opened my legal mail." He filed a grievance about each.

Black's allegations of two instances of mail interference are insufficient to state a claim for denial of access to the courts because he has not alleged that the interference with his mail either constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any way prejudiced his legal actions. He has therefore failed to state a claim for interference with his mail, since the "specific allegations of invidious intent or of actual harm as a result of the incidents of tampering are few and thus the implication of an actionable violation

is not obvious on its face." <u>Davis</u>, 320 F.3d at 351-52 (stating that a prisoner must also show that interference with incoming legal mail, by prison officials, was done "'regularly and unjustifiably.'") (quoting <u>Cancel v. Goord</u>, No. 00 Civ. 2042, 2001 WL 303713, at *6 (S.D.N.Y. March 29, 2001); <u>see also</u> <u>Jermosen v. Coughlin</u>, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (a mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation).

Plaintiff's other access to courts claim, that is, that he was precluded from using the law library in December, 2015, is dismissed because he fails to allege any facts showing that defendant Quinones caused "actual injury," <u>i.e.</u>, that the defendant's actions "'hindered [the plaintiff's] efforts to pursue a legal claim.'" <u>Davis</u>, 320 F.3d at 351 (quoting <u>Monsky</u>, 127 F.3d at 247); <u>Amaker v. Goord</u>, No. 98 Civ. 3634, 2002 WL 523371, at *11-12 (S.D.N.Y. March 29, 2002) (dismissing denial of access to the courts claim because inmate suffered no actual injury and therefore lacked standing).

## V. Leave to Amend

The Second Circuit requires district courts that dismiss *pro se* complaints under 28 U.S.C. § 1915 to grant leave to amend unless it would be futile to do so. <u>See</u> e.g. <u>Terry v. Patchogue</u>, __ F.3d __, 2016 WL 3440189, at *2 (2d Cir. 2016). In a case like this, where the pleading inadequacy is the failure to set forth sufficient factual allegations rather than the failure of the legal theory itself, it is difficult to conclude definitively that amendment would be futile.

Accordingly, plaintiff is granted leave to amend. If he wishes to do so, he must file an amended complaint, limited to the medical and mail issues, within 20 days. He must set forth sufficient factual allegations, not conclusions, to satisfy the insufficiencies described in this

15

decision.  He is advised that any such amended complaint will completely replace his original complaint, so he should not assume that anything that he has previously alleged will be considered in determining whether his amended complaint is adequate.  The document he files must be labeled "Amended Complaint" and bear the case number for this action.  If the amended complaint also fails to satisfy the applicable pleading standards, the case will be dismissed.

## CONCLUSION

The claims and all defendants concerning the search and plaintiff's arrest are dismissed from this action as duplicative, without prejudice to Black v. Parole Officer Petitinato, No. 16 Civ. 2320.  The medical and mail claims remaining claims are dismissed with leave to amend within 20 days. Failure to timely file an amended complaint shall result in dismissal of this action.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and so *in forma pauperis* is denied for purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
	July 22, 2016